# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, by and through Navjeet Bal, Commissioner of Department of Revenue, <br>     Plaintiff <br><br> vs. <br><br> COUTO'S REALTY INVESTMENT CO. II, LLC, and SOVEREIGN BANK, <br>     Defendants and <br>     Third Party Plaintiffs <br> v. <br><br> MAURICE B. WYMAN and MICHAEL P. WYMAN, Individually and as Trustees of the, <br> M & M WYMAN TRUST <br>     Third Party Defendants <br><br> and <br><br> United States of America <br>     Party in interest | Civil Action No. 10- 10891-PBS <br><br> Judge Patti B. Saris <br><br> Magistrate Judge <br> Marianne B. Bowler |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS COUTO'S REALTY INVESTMENT CO., II, LLC, AND SOVEREIGN BANK

The plaintiff, the Commonwealth of Massachusetts, by and through Navjeet K. Bal, Commissioner of the Department of Revenue ("MDOR") submits this memorandum in support of its motion for summary judgment against the defendants Couto's Realty Investment Co., Inc. ("Couto's Realty") and Sovereign Bank ("Sovereign").

## I.     INTRODUCTION

This is an action by the Massachusetts Department of Revenue ("MDOR") to foreclose tax liens against two parcels of real property located at 278 Main Street, Bourne, Mass. (the "Bourne Property") owned by Couto's Realty, in order to collect an income tax liability of

approximately $660,000 owed by third-party defendants Maurice Wyman ("Maurice") and

Michael Wyman ("Michael") (jointly, the "Wymans").  Couto's Realty purchased the Bourne

Property from the Wymans on April 24, 2008, subject to MDOR's tax lien.  MDOR's tax liens

also prime the mortgage that Couto's Realty granted to Sovereign Bank.

There is no genuine issue as to any material fact, and a summary of the relevant facts is

given below.  MDOR is entitled as a matter of law to entry of a judgment (a) declaring and

affirming that MDOR's tax liens are valid as against the Bourne Property, and (b) directing

Couto's Realty and Sovereign to pay the amount secured by the tax liens, or in the alternative

authorizing MDOR to enforce the tax liens by selling the Bourne property at a public auction,

following substantially the same procedures specified in G.L. c. 244, §§ 11 - 15 for the

foreclosure of a mortgage by the power of sale.

## II.   PROCEDURAL HISTORY

On July 8, 2008, MDOR filed the complaint commencing this action.  With MDOR's

assent to enlarge the time for filing the answer, Couto's Realty and Sovereign filed a joint

answer on September 2, 2008.  On September 17, 2008, Couto's Realty and Sovereign filed a

third-party complaint against the Wymans individually and as trustees of the Wyman Trust, and

on October 15, 2008, the Wymans individually and as trustees filed an answer to the third party

complaint.

On February 12, 2010, Couto's Realty and Sovereign, and the Wymans individually and

as trustees of the Wyman Trust, each filed motions for summary judgment.  On April 26, 2010,

the United States moved to intervene as a party in interest, and filed a proposed complaint in

intervention.  The United States' motion was allowed on May 4, 2010.  On May 20, 2010, and

May 28, 2010, respectively, Couto's Realty and Sovereign and MDOR filed an answer to the

United States' complaint.

On June 6, 2010, the case was removed to this Court by the United States. On July 28, 2010, the Court held a pre-trial conference and adopted the parties' proposed schedule for dispositive motions.  On July 14, 2010, Couto's Realty and Sovereign filed an amended third party complaint against the Wymans individually and as trustees of the Wyman Trust, and on August 10, 2010, Couto's Realty and Sovereign filed an amended answer to the United States' complaint.

### III.   SUMMARY OF UNDISPUTED FACTS [1]

#### The Wyman Trust

By declaration of trust dated August 31, 1972, the Wymans as settlors created the M & M Wyman Trust (the "Wyman Trust").  [Stmt. ¶19]   The declaration of trust contained the following two provisions:

> N.   the Trustees may at any time amend, alter or terminate this Declaration of Trust, provided however, that no such alteration or amendment may be made which shall extend the term of this Trust beyond the term hereof or change the interest of any beneficiary hereunder....

> O.   The trust, unless terminated sooner in accordance with other Sections of this instrument, shall last for twenty (20) years from the date of this instrument, and for whatever period of time is necessary to liquidate and distribute the assets of the Trust.

[McGurk Aff., Ex. K, Declaration of Trust at ¶ N, O]

On December 8, 1993, the Wymans filed a First Amendment to the declaration of trust, dated November 10th, 1993, which expressly extended the term of the Wyman Trust for another twenty (20) years from its date of execution. [Stmt. ¶20.]  The Wymans were the sole

---

[1]   "Stmt." refers to "Plaintiff's Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried In Support Of Plaintiff's Motion For Summary Judgment Against Defendants" filed herewith. "McGurk Aff." refers to the "Affidavit of Donald E. McGurk In Support Of Plaintiff's Motion For Summary Judgment" filed herewith, and to the exhibits attached to that affidavit.

beneficiaries and the sole trustees of the Wyman Trust. [Stmt. ¶21.]

**The Bourne Property and MDOR's Tax Liens**

Michael and Maurice, as Trustees of the Wyman Trust, acquired title to the Bourne Property by two quitclaim deeds recorded with the Registry on September 14, 1972, and May 11, 1987.  [Stmt. ¶22]  Prior to April 24, 2008, MDOR recorded notices of the tax liens with the Barnstable Registry of Deeds, based on tax assessments against each of the Wymans.

Maurice:   In 2002, 2003, and 2004, MDOR received information from the federal government showing that the Internal Revenue Service had made a final determination increasing the federal taxable income of Maurice for the years 1993 - 1999.  [Stmt. ¶1]  Acting pursuant to G.L. c. 62C, § 30, MDOR assessed Massachusetts income tax against Maurice, and issued notices of assessment of the tax to him for these years in the total amount of $231,568.  In addition, Maurice filed Massachusetts income tax showing a tax due for tax year 2002 (thereby automatically assessing the tax due pursuant to G.L. c. 62C, § 26(a)), but failed to pay the tax in full.  (Stmt. ¶5) As authorized by G.L. c. 62C, § 50, MDOR recorded notices of the tax liens with the Barnstable Registry of Deeds. [Stmt. ¶ 8]

Michael:   In 2002, 2003, and 2004, MDOR received information from the federal government showing that the Internal Revenue Service had made a final determination increasing the federal taxable income of Michael for the years 1993 - 1995 and 1997-1999.  [Stmt. ¶10]  Acting pursuant to G.L. c. 62C, § 30, MDOR assessed Massachusetts income tax against Maurice, and issued notices of assessment of the tax to him for these years in the total amount of $181,689.  [Stmt. ¶12]  In addition, Maurice filed Massachusetts income tax showing a tax due for tax year 2002 (thereby automatically assessing the tax due pursuant to G.L. c. 62C,

§ 26(a)), but failed to pay the tax in full.  [Stmt. ¶514]  As authorized by G.L. c. 62C, § 50, MDOR recorded notices of the tax liens with the Barnstable Registry of Deeds. [Stmt. ¶ 17]

On April 24, 2008, the Wyman Trust transferred title to the Bourne Property to Couto's Realty, and on the same day Couto's Realty granted a mortgage on the Bourne Property to Sovereign.  (Stmt. ¶¶ 15, 16.)   MDOR's tax liens against the Bourne Property were not released or discharged prior to April 24, 2008, and continued to secure the unpaid tax liability. As of November 13, 2009, the total amount of Maurice's tax liability secured by these tax liens was approximately $386,440. [Stmt. ¶7] As of November 13, 2009, the total amount of Michael's tax liability secured by these tax liens was approximately $289,788. [Stmt. ¶16]

As discussed below, MDOR's tax liens attached and remain attached to the Bourne Property, and are entitled to priority as against Couto's Realty and Sovereign.

## IV.   SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law."  M.P.M. Builders, LLC v. Dwyer, 442 Mass. 87, 89 (2004); Kesler v. Pritchard, 362 Mass. 132, 134 (1972); Mass.R.Civ.P. Rule 56(c).

## V.   ARGUMENT

MDOR will review the terms of the statute that governs the creation of the tax lien and summarize the assessments against the Wymans that gave rise to the tax liens in this case, none of which is in dispute.  MDOR will then show why the express terms of the Massachusetts tax lien statute make the tax liens effective against the Bourne Property.  The concluding section addresses the effect of the initial twenty-year term of the trust, and shows that this term limit is

not effective to automatically terminate the trust when read in its entirety and together with the subsequent amendment expressly extending the term of the trust for another twenty years.

A. **Massachusetts tax liens attach to "property and rights to property" pursuant to G.L. c. 62C, § 50.**

The tax liens that are the subject of this action are statutory liens, created by the operation of G.L. c. 62C, § 50(a) and (b), which provide that a tax lien is created as of the date that MDOR makes an assessment of a tax, if the person assessed fails to pay the tax after demand.  An assessment is also "deemed" to be made on the date a tax return is filed. The tax lien is effective against "property and rights to property belonging to" the person assessed.  Leger v. Commissioner of Revenue, 421 Mass. 168 (1995) (tax lien arises on assessment and may attach to taxpayer's property prior to completion of administrative review of taxpayer's objection to the assessment); Middlesex Sav. Bank v. Johnson, 777 F. Supp. 1024, 1027 (D. Mass. 1991) (Massachusetts tax lien arises on the date of assessment); cf. Heritage Bank for Sav. v. Doran, 399 Mass. 855 (1987) (in the absence of an assessment there is no lien).

The relevant provisions of the tax lien statute state as follows (paragraphs have been added to improve clarity):

> (a)    [First sentence:]    If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount, including any interest, additional amount, addition to tax, assessable penalty or forfeiture, together with any costs that may accrue in addition thereto, shall be a lien in favor of the commonwealth upon all property and rights to property, whether real or personal, belonging to such person.
> [Second sentence:]    The lien shall also extend to property or rights to property of a trust with respect to tax amounts due from a grantor or other person treated as the owner of a portion of such trust by reason of sections 671-678 of the Code ...
> [Third sentence:]    With respect to real property and fixtures, the lien shall not be valid against a mortgagee, pledge, purchaser or judgment creditor unless the notice to be recorded pursuant to paragraph (1) of subsection (b) includes therein the names of the persons in whom the record title to the real property or fixtures stands at the time of recording the notice.

[Fourth sentence:]   The lien shall arise at the time the assessment is made or deemed to be made ....

[Fifth sentence:]   The lien ... shall remain in full force and effect for ... a period of 10 years after the date of assessment, deemed assessment or self-assessment of the tax ....

(b)   [First sentence:]   The lien imposed by this section shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the commissioner ... [w]ith respect to real property or fixtures, in the registry of deeds of the county where such property is situated ....

G.L. c. 62C, § 50(a), (b).

### B.   MDOR assessed an Income Tax against the Wymans that remained unpaid after demand, thereby creating tax lien.

There is no dispute that MDOR made assessments of income tax against both Maurice and Michael, as described in the McGurk Affidavit at ¶¶5-16.  The basis for the assessments was twofold:

a.   Assessments pursuant to G.L. c. 62C, § 26, based on the amount shown as the tax due upon Massachusetts income tax returns filed with MDOR ("Tax Return Assessment"), and

b.   Assessments pursuant to G.L. c. 62C, § 30, based on a determination by the federal government that there was an increase from the amount previously reported in their taxable income ("Federal Change Assessment").

Demand for payment of these assessments was made at or shortly after the date of assessment (McGurk Affidavit, paragraph 10), but the assessments were not paid by either of the Wymans, and statutory lien came into existence as of the date of the assessments pursuant to Section 50(a).

MDOR then filed notices of the tax liens with the Barnstable Registry of Deeds, which is the registry of deeds for the county in which the Bourne Property is located. (McGurk Affidavit, paragraphs 15 and 21).  Certified copies of the notices of tax liens are attached to the McGurk Affidavit as Exhibits E and J.

C.   __MDOR's tax liens took effect against the Bourne Property as property belonging to the Wymans.__

MDOR acknowledges that record title to the Bourne Property stood in the name of the Wyman Trust at all times prior to April 24, 2008, the date of the conveyance to Couto's Realty. MDOR's tax liens nevertheless took effect against the Bourne Property because the Wymans are treated as the owners of the Bourne Property, either under the terms of the Massachusetts tax lien, or under the common law applied to self-settled spendthrift trusts.

1.   **The express terms of the Massachusetts tax lien statute extend the tax liens to the Bourn Property.**

The Wymans are treated as owners of the Bourne Property by applying sections 671-678 of the Internal Revenue Code ("IRC"), made applicable herein by the second sentence of G.L. c. 62C, §50(a), which states.

> The lien shall also extend to property or rights to property of a trust with respect to tax amounts due from a grantor or other person treated as the owner of a portion of such trust by reason of sections 671-678 of the Code ... but with respect to real property and fixtures, the lien shall not be valid against a mortgagee, pledge, purchaser or judgment creditor unless the notice to be recorded pursuant to paragraph (1) of subsection (b) includes therein the names of the persons in whom the record title to the real property or fixtures stands at the time of recording the notice.

Id. [2]

Since the first words of this sentence expressly "extend…the lien… to property," these IRC sections can and should be applied to identify property held in trust to which the Massachusetts tax lien will attach as the result of the grantor (or other person) being "treated as

---

[2]      The term "Code" as used in Section 50(a) is defined as follows: "The following words as used in this chapter shall, unless the context otherwise requires, have the following meanings:   'Code', the Internal Revenue Code of the United States in effect on July first, nineteen hundred and eighty-three." G.L. c. 62C, § 1.  Other chapters of the General Laws have been amended to reflect amendments to the Internal Revenue Code (see, e.g. G.L.c. 62, § 1), but the 1983 version of the Code remains the relevant version for chapter 62C. A copy of IRC §§ 671-678 as in effect in 1983 is attached hereto as Exhibit 1.

the owner."  In this case, Sections 673, 674, 675, and 676 apply to the Wyman Trust so as to

treat the Wymans, as the owners of the Bourne Property, and MDOR's tax liens therefore extend

to the Bourne Property.

### IRC § 673.

IRC § 673 provides,

> The grantor shall be treated as the owner of any portion of a trust in
> which he has a reversionary interest in either the corpus or the income
> therefrom if, as of the inception of that portion of the trust, the interest will or
> may reasonably be expected to take effect in possession or enjoyment within
> ten years commencing with the date of the transfer of that portion of the trust.

IRC § 673(a).

The conditions of this section are met with respect to the Bourne Property in two ways.

First, the Wyman Trust was created by declaration of trust dated August 31, 1972, and the term

of the trust was specified to be twenty (20) years.  (Stmt. ¶¶ 1, 2; McGurk Aff., Ex. A,

Declaration of Trust at ¶ O.)  The Wyman Trust acquired record title to the Bourne Property on

December 23, 1983 and May 11, 1987 -- dates that are less than ten years prior to the proposed

or expected date of termination of the trust, on August 31, 1992.  This satisfies the ten-year

requirement of Section 673.

Second, the Wymans held a reversionary interest in the corpus of the Bourne Property

within the meaning of Section 673.  Only the Wymans held beneficial interests under the Wyman

Trust.  This is shown by the amendment to the trust [McGurk Aff., Ex. M], which identifies

Michael and Maurice as the sole beneficiaries, and by ¶ L of the Declaration of Trust [McGurk

Aff. Ex. K], which specifies that "the entire beneficial interest of this trust" is held by Michael

and Maurice as the two persons named as beneficiaries.  The Declaration of Trust provides, in

¶8, for payment of income from the trust to the Wymans as beneficiaries, and ¶N prohibits any

amendment to the trust that would "change the interest of any beneficiary." [McGurk Aff. Ex. K]

Paragraph O, which establishes the twenty-year term of the trust, also includes the only provision for disposing of the principal assets of the trust, stating, "The trust … shall last for twenty (20) years … and for whatever period of time is necessary to liquidate and distribute the assets of the Trust." [McGurk Aff. Ex. K]  Since only the Wymans are beneficiaries, any liquidation and distribution of corpus of the Trust assets, including the Bourne Property, would inure to their benefit and they would have received a complete distribution of the value of the Bourne Property under the terms of Paragraph O.

Thus, since the Wymans were also the sole grantors of the trust, they retained a reversionary interest in the Bourne Property within the meaning of Section 673. As stated by the First Circuit,

> [W]hen we look at the obvious purpose of section 673(a), it must be to prevent a grantor from making a temporary transfer of assets in order to diminish, for a limited period, the receipt of taxable income therefrom.

Crane v. Commissioner, 368 F.2d 800, 802 (1st Cir. 1966).  The Wymans are therefore treated as the owners of the Bourne Property under IRC § 673, and MDOR's Section 50(a) tax lien extends to the Bourne Property.

### **IRC Section 674.**

The same result is reached under IRC § 674(a), which provides,

> The grantor shall be treated as the owner of any portion of a trust in respect of which the beneficial enjoyment of the corpus or the income therefrom is subject to a power of disposition, exercisable by the grantor or a nonadverse party, or both, without the approval or consent of any adverse party.

IRC § 674(a).

The conditions of this section are also met with respect to the Bourne Property.

Paragraph E(8) of the Declaration of Trust [McGurk Aff. Ex. K] contains the following provision:

> [T]he Trustees shall have the following powers and such additional powers as may be incidental thereto:
>
> (8)    In the Trustee's discretion, to pay to the beneficiaries at any time or times determined by the Trustees such amount or amounts out of the earnings or surplus of the Trust as the Trustees may determine….

The Wymans, as grantors and in their capacity as trustees of the Wyman Trust, can thus dispose of the Wyman Trust income from the Bourne Property without approval or consent of any party, whether adverse or not.[3]

None of the exceptions listed in paragraphs (1) through (8) of Section 674(b) apply in this case.   The power to distribute income is not applicable to support or maintenance of a dependent (§ 674(b)(1)); is not limited to a period after ten years (§ 674(b)(2)); is not exercisable only by will (§ 674(b)(3)); is not exercisable solely in favor of charitable institutions (§ 674(b)(4)); does not include a power to distribute corpus (§ 674(b)(5)); is not limited by a power of appointment or to distribution on termination of the trust (§ 674(a)(6)); is not exercisable only during the legal disability of the beneficiary (§ 674(b)(7)); and does not include the power allocate distributions between income and corpus (§ 674(b)(8)).   The power to distribute income is exercisable exclusively and solely by the Wymans, who are the grantors, and so the exceptions in § 674(c) and § 674(d) for powers exercisable by non-grantors does not apply.

Accordingly, the Wymans are treated as the owners of the Bourne Property under Code Section 674, and MDOR's Section 50(a) tax lien extends to the Bourne Property.

### IRC § 675.

The same result is reached under IRC § 675(1), which perfectly describes an

---

[3]    The term "adverse party" is defined as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or non-exercise of the power…."  (IRC § 672)  This term is not applicable here, in any event, since the exercise of the power of disposition under the Wyman Trust is not subject to the approval or consent of <u>any</u> party.

administrative power that is set forth in the Declaration of Trust for the Wyman Trust. [McGurk

Aff. Ex. K] Code Section 675(1) provides,

> The grantor shall be treated as the owner of any portion of a trust in respect of which ... [a] power exercisable by the grantor ... without the approval or consent of any adverse party enables the grantor ... to purchase, exchange, or otherwise deal with or dispose of the corpus or the income therefrom for less than adequate consideration in money or money's worth.

IRC § 675(1)

Paragraph E(10) of the Declaration of Trust confers this very power on the Wymans, as

follows:

> E.   [T]he Trustees shall have the following posers and such additional powers as may be incidental thereto:
> (10)   To act as a conduit, nominee or "straw" in all types of transactions and to give mortgages in connection therewith, execute notes and transfer title to any of the Trust property without consideration or for a nominal consideration.

No approval by any adverse party is even mentioned, much less required. The trust

phrase "without consideration or for a nominal consideration" falls within the scope of the

statutory language, "less than adequate consideration in money or money's worth."   This power

extends to the Bourne Property, as part of the corpus of the Wyman Trust. Thus the Wymans are

treated as the owners of the Bourne Property under Code Section 675(1), and MDOR's Section

50(a) tax lien extends to the Bourne Property.[4]

**IRC § 676.**

Again, the same result is reached under IRC § 676(a), which refers to the power to revoke

the trust.  This power is found in paragraph K of the Wyman Trust. Code Section 676(a)

---

[4]      Paragraph E(13) and (18) of the Declaration of Trust confers on the Wymans the lending powers described in Code Section 675(2); however, these powers only relate to so much of the corpus as consists of cash, and do not operate to cause the grantors to be treated as owners of the Bourne Property, which consists of real estate, not cash.

provides,

> The grantor shall be treated as the owner of any portion of a trust, whether or not he is treated as such owner under any other provision of this part, where at any time the power to revest in the grantor title to such portion is exercisable by the grantor....

IRC § 675(1).

Paragraph K of the Wyman Trust states, "The Trustees may at any time amend, alter or <u>terminate</u> this Declaration of Trust...." [McGurk Aff. Ex. K]  Termination of the trust would cause title to the Bourne Property to revest in the Wymans, who are the sole beneficiaries and are also the grantors. Accordingly, the Wymans are treated as the owners of the Bourne Property under Code Section 676(a), and MDOR's Section 50(a) tax lien extends to the Bourne Property.

Although several of the assessments against the Wymans, and the concomitant creation o of the tax liens, occurred before the enactment of the second sentence of § 50(a), that enactment gave rise to after-acquired property to which MDOR's tax liens immediately attached.[5]  The second sentence of Section 50(a) was enacted and became effective on December 8, 2005. [6]  This enactment expanded the extent of the "property and rights to property" to which the tax lien might attach.  "Property and rights to property," title to which was previously held in trust, is no longer insulated from the tax lien, if the conditions in Code Sections 671 - 678 are satisfied.  For taxpayers like the Wymans, against whose "property and rights to property" tax liens had been created prior to December 8, 2005, the effect of this enactment was to create a class of after-acquired property that is subject to the tax lien.

---

[5]    As set forth in the McGurk Affidavit at paragraphs 5(i), 6, 11(i), and 12, the assessments against Maurice and Michael that created the tax liens for tax years 1993 - 1998 and 2002 were made in 1999 and 2003, prior to the enactment of the second sentence of § 50(a).  The assessment for 1999 was made in 2006.

[6]    St. 2002, c. 163, § 18, which inserted the second sentence, was approved and became effective on December 8, 2005.

After-acquired property was held to be subject to MDOR's tax lien in <u>Luchini v. Comm'r of Revenue,</u> 436 Mass. 403 (2002). The Luchinis filed tax returns in November 1992 showing no tax due; MDOR disagreed, issued an assessment for approximately $41,000; and in April 1993, MDOR recorded a notice of the tax lien created by the assessment.  More than one year later Mr. Luchini acquired $22,000, representing his interest in property deeded to him by his mother.  The Supreme Judicial Court resolved a question of first impression under Massachusetts law and held that the Massachusetts tax lien, like the federal tax lien, attaches to after-acquired property.  The court stated, "[t]he statutory language establishing that a lien 'upon all property and rights to property, whether real or personal, belonging to [the taxpayer] . . . shall continue until the liability . . . is satisfied,' G. L. c. 62C, § 50(a), indicates that 'the lien applies to property owned by the delinquent at any time during the life of the lien.' [quoting <u>Glass City Bank v. United States</u>, 326 U.S. 265 (1945)]." <u>Id.</u> at 406.

Here, on December 8, 2005, by virtue of the enactment of the second sentence of Section 50(a), the Wymans acquired an interest in the Bourne Property that became subject to the tax lien.  The statutory statement that "[t]he lien shall also extend to property or rights to property of a trust with respect to tax amounts due from a grantor or other person treated as the owner of a portion of such trust by reason of sections 671-678 of the Code" has the effect of treating the Wymans as the owner of the Bourne Property to the same degree as if they had taken a deed to it, as Mr. Luchini did, for the purpose of imposing the tax lien.  The tax liens should therefore be sustained as effective against the Bourne Property, pursuant to the second sentence of Section 50(a).

Finally, the notices of MDOR's tax liens [McGurk Aff. Ex. E, J] comply with the requirement of the second clause of the second sentence of § 50(a), which states,

[W]ith respect to real property and fixtures, the lien shall not be valid against a mortgagee, pledge, purchaser or judgment creditor unless the notice to be recorded pursuant to paragraph (1) of subsection (b) includes therein the names of the persons in whom the record title to the real property or fixtures stands at the time of recording the notice.

Id.

 The "persons" in whose names record title to the Bourne Property stood were Maurice Wyman and Michael Wyman, and the names on the notices of the tax liens were "Maurice Wyman" and "Michael Wyman."  The Barnstable County Registry of Deeds index shows that MDOR's tax liens were in fact recorded and indexed under the names "Wyman, Maurice" and "Wyman, Michael."

**Ex. Q** shows that the following notices of tax liens were recorded and indexed under the name "Wyman, Maurice," and correspond with the notice of tax lien actually recorded in the name of "Maurice Wyman":

Wyman, Maurice B (& O[ther]) (Gtor) [Grantor]
Massachusetts (Revenue)                    State And Federal Liens   10-16-2003          17800-296
        Corresponds with Ex. E, notice of tax lien recorded on 10-16-2003 at Bk 17800 P 296

Wyman, Maurice B (& O[ther]) (Gtor) [Grantor]
Massachusetts (Revenue)                    State And Federal Liens   3-29-2004  18371-64
        Corresponds with Ex. E, notice of tax lien recorded on 3-29-2004 at Bk 18371 P 264

Wyman, Maurice B (& O[ther]) (Gtor) [Grantor]
Massachusetts (Revenue)                    State And Federal Liens   4-09-2004  18428-350
        Corresponds with Ex. E, notice of tax lien recorded on 4-09-2004 at Bk 18428 P 350


**Ex. S** shows that the following notices of tax liens were recorded and indexed under the name "Wyman, Michael," and correspond with the notice of tax lien actually recorded in the name of "Michael Wyman":

Wyman, Michael (Gtor) [Grantor]
Massachusetts (Revenue)                    State And Federal Liens   02-24-2004          18245-96
  Corresponds with Ex. J:
Notice of tax lien naming "Michael Wyman" recorded on 2-24-2004 at Bk 18245 P 96

Wyman, Michael (Gtor) [Grantor]
Massachusetts (Revenue)                State And Federal Liens   04-09-2004         18428-349
  Corresponds with <u>Ex. J</u>:
Notice of tax lien recorded on 04-09-2004 at Bk 18428 P 349

Wyman, Michael (Gtor) [Grantor]
Massachusetts (Revenue)                State And Federal Liens   11-19-2007         22489-83
  Corresponds with <u>Ex. J</u>:
Notice of tax lien recorded on 11-19-2007 at Bk 22489 P 83

Any entity interested in acquiring the Bourne Property would have been notified of the existence of MDOR's tax liens.  Indeed, neither the Coutos nor Sovereign claim that they had no knowledge of MDOR's tax liens.  Since the notices of the tax liens complied with the requirements of the second sentence of section 50(a), the tax liens attach to the Bourne Property.

**2.      The spendthrift provision in paragraph K of the Wyman Trust renders the Bourne Property subject to MDOR's tax lien.**

MDOR also relies on another ground to sustain the tax liens against the Bourne Property. Paragraph K of the Wyman Trust contains a so-called "spend-thrift" provision, which purports to insulate the Wyman's beneficial interest in the assets of the Wyman Trust, including the Bourne Property, from the claims of the Wyman's creditors.

> K.      The interest of each beneficiary in the income or principal of both of this Trust shall be free from the control or interference of any creditor of a beneficiary ...  and shall not be subject to be taken by any creditor of any beneficiary by any legal or equitable process whatever nor shall the same pass in any event to the assignee or trustee of any beneficiary under any deed that may be executed by such beneficiary or under any insolvency or bankruptcy law, state or national.  The interest of any beneficiary shall not be anticipated or alienated.

McGurk Aff. Ex. K, ¶K.

Massachusetts law renders this provision ineffective by setting aside the entire trust.

"The established policy of this Commonwealth long has been that a settlor cannot place property in trust for his own benefit and keep it beyond the reach of creditors." <u>Merchants Nat'l Bank v.</u>

Morrissey, 329 Mass. 601, 605 (1953).  "[W]hen a man settles his property upon a trust in his own favor, with a clause restraining his power of alienating the income, he undertakes to put his own property out of the reach of his creditors, while he retains the beneficial use of it.... To permit a man thus to attach to a valuable interest in property retained by himself the quality of inalienability and of  exemption from his debts, seems to us to be going further than a sound public policy will justify."  Pacific Nat'l Bank v. Windram, 133 Mass. 175, 176-177 (1882).

In Ware v. Gulda, 331 Mass. 68 (1954), the Supreme Judicial Court held the creditor can reach the trust assets and adopted the Restatement rule that authorizes a creditor of the grantor/beneficiary of a spendthrift trust to reach the maximum amount payable to the grantor/beneficiary:

> The rule we apply is found in Restatement: Trusts, § 156 (2): "Where a person creates for his own benefit a trust for support or a discretionary trust, his transferee or creditors can reach the maximum amount which the trustee under the terms of the trust could pay to him or apply for his benefit."

Id. at 70.

Here the terms of the Wyman Trust enable the Wymans, as trustees and grantors, to transfer to themselves as beneficiaries both the income and the principal of the trust, including title to the Bourne Property.  With respect to income, ¶ E(8) states,

> E.     [T]he Trustees shall have the following posers and such additional powers as may be incidental thereto:
> 8.     In the Trustee's discretion, to pay to the beneficiaries at any time or times determined by the Trustees such amount or amounts out of the earnings or surplus of the Trust as the Trustees may determine ....

With respect to the principal or corpus of the trust, which includes title to the Bourne Property, five provisions of the trust are relevant [McGurk Aff. Ex. K]:

> Paragraph D: "The trustees shall have full legal title to all property of the Trust ... and said Trustees shall have and exercise the exclusive management and control of such property in any manner that said Trustees shall deem in the best interest of the beneficiaries ...."

Paragraph E(10): "[T]he Trustees shall have the following posers and such additional powers as may be incidental thereto: 10.To act as a conduit, nominee or "straw" to in all types of transactions and to give mortgages in connection therewith, execute notes and transfer title to any of the Trust property without consideration or for a nominal consideration...."

Paragraph E(18): "[T]he Trustees shall have the following posers and such additional powers as may be incidental thereto: 18. To by or, sell to,, borrow from, lend to, or deal with any person or persons who may be Trustee or beneficiary hereunder as freely and effectually as with any stranger or other person...."

Paragraph L:  "The entire beneficial interest of this trust shall be held by the persons listed as beneficiaries in the Schedule of Beneficiaries this day executed by them and the Trustees; and the interests of the beneficiaries are as stated in said Schedule." [As noted previously, the Wymans are identified as the sole beneficiaries in the amendment to the trust. (See McGurk Aff., Ex. M.)

Paragraph N:  "The Trustees may at any time alter, amend or terminate this Declaration of Trust, provided however that no such alteration or amendment may be made which shall ...  change the interest of any beneficiary hereunder.  Such alteration, amendment or termination shall be in writing ...."

Reading these terms together, the Wymans hold the entire beneficial interest under the trust (See ¶L).  In ¶D, the Wymans, as grantors, instructed themselves, as trustee, to manage the trust property "in the best interest of" themselves as beneficiaries. In ¶E(18), the Wymans, as grantors, granted to themselves, as trustees, the power to deal with themselves as trustees,  and with themselves as beneficiaries, "freely and effectually."   In ¶E(10) the Wymans, as grantors, granted to themselves as trustees the power to "transfer title to the Trust property without consideration."   Had the Wymans intended to exclude the power to the transfer of title to the Bourne Property to themselves as beneficiaries, it would have been easy to say so; the absence of such a restriction is more consistent with the broad power granted in ¶E(18).  In ¶ N, the Wymans, as grantors, reserved to themselves, as trustees, the power to terminate the trust. Significantly, the restrictions on "alteration or amendment" of the trust, in particular the prohibition against changing the interest of any beneficiary, do not apply to "termination."   This

- 18 -

means that the Wymans retained to the right to change the beneficiaries upon termination -- i.e.,

they reserved full dispositive power over the corpus of the trust upon termination.

These terms, particularly ¶E(10) (power to transfer title) and ¶N (power to terminate)

establish that the Wymans retained the power to transfer title to the income and the principal of

Bourne Property to themselves as beneficiaries.  As a result, MDOR, as a creditor of the

Wymans, is entitled to apply its tax lien to the Bourne Property, to foreclose on that lien, and to

sell the Bourne Property to satisfy the tax claim.

### D.      The Wyman Trust did not terminate on August 31, 1992.

MDOR relies on the foregoing two arguments, because the terms of the declaration of

trust creating the Wyman Trust have been in force at all relevant times.  The expiration of the

twenty-year term of the Wyman Trust on August 31, 1992, is not relevant, since the Wymans

manifested their intention to continue the Wyman Trust in existence by recording the amendment

to the trust.

> [A] trust, even one of fixed term, generally does not terminate until
> the corpus is distributed by the trustees, see Rothwell v. Rothwell, 283 Mass.
> 563, 570 (1933).

Franklin Foundation v. Attorney Gen., 416 Mass. 483, 489 (1993)

In this case the Wyman Trust expressly provided, in the same paragraph establishing the

twenty year term, that the trust would continue for the time needed to dispose of the trust assets:

> O.      The trust, unless terminated sooner in accordance with other
> Sections of this instrument, shall last for twenty (20) years from the date of
> this instrument, and for whatever period of time is necessary to liquidate and
> distribute the assets of the Trust.

McGurk Aff. Ex. K, ¶O.

Just as in Rothwell v. Rothwell, 283 Mass. 563 (1933), where the trustees were required

to pay over net income and distribute the corpus, the Wyman Trust imposed ongoing duties of

liquidation and distribution.  These duties were never performed; in fact, Maurice and Michael

decided to continue the Wyman Trust in existence and recorded the amendment to accomplish

this.  Under Paragraph O the Wyman Trust continued in existence from and after August 31,

1992, through and including November 10, 1993, the date the amendment was executed and took

effect. There is no evidence to contradict their stated intention to continue the Wyman Trust in

existence for an additional twenty years from November 10, 1993.  Nevertheless, the existence

of the Wyman Trust does not shield the Bourne Property from MDOR's tax liens, either under

the provisions of G.L. c. 62C § 50(a) or under the common rule governing spendthrift trusts.

## **CONCLUSION**

For the foregoing reasons, MDOR respectfully requests that this Court enter summary

judgment in its favor against Couto's Realty Investment Co., Inc. and Sovereign Bank, and grant

such further and other relief as this Court deems just and appropriate.

COMMONWEALTH OF MASSACHUSETTS
by and through
NAVJEET K. BAL, COMMISSIONER OF REVENUE
By her attorneys,
MARTHA COAKLEY, ATTORNEY GENERAL
KEVIN W. BROWN, Esq. Special Asst. Attorney General

*/S/  Jeffrey S. Ogilvie*
JEFFREY S. OGILVIE  (BB0 # 377815)
  *Counsel for the Commissioner*
Department of Revenue
Litigation Bureau, 7th Floor
P.O. Box 9565
100 Cambridge Street
Boston, MA 02114-9565
(617) 626-3223
email: ogilviej@dor.state.ma.us

Dated:   August 30, 2010

The undersigned certifies that on August 30, 2010, a copy of the foregoing document filed through the ECF system was sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on August 30, 2010.

*/S/  Jeffrey S. Ogilvie*
Jeffrey S. Ogilvie  (BB0 # 377815)