**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION NO. 10-CV-10891-PBS
MAGISTRATE JUDGE
MARIANNE B. BOWLER

|  |  |
|---|---|
| COMMONWEALTH OF MASSACHUSETTS, by and through NAVJET BAL, COMMISSIONER OF THE DEPARTMENT OF REVENUE OF THE COMMONWEALTH OF MASSACHUSETTS, | ) ) ) ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| COUTO'S REALTY INVESTMENT CO., II, LLC and SOVEREIGN BANK, | ) ) ) |
| Defendants and Third Party Plaintiffs, | ) ) ) |
| v. | ) ) |
| MAURICE B. WYMAN and MICHAEL P. WYMAN, individually and as Trustees of M&M WYMAN TRUST, | ) ) ) ) ) |
| Third Party Defendants, | ) ) |
| and | ) ) |
| UNITED STATES OF AMERICA, Party-in-interest. | ) ) ) ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT AND IN <u>OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION</u>**

This case is an attempt by the USA and the Commonwealth of Massachusetts to enforce tax liens that each has recorded against Maurice B. Wyman and Michael P. Wyman, individually, (together, the "Wymans") representing purported personal income tax liabilities. Record title to the real estate at issue, 278 Main Street, Bourne, Massachusetts (the "Property"), was never held by the Wymans, individually. Rather, when the liens were recorded, record title to the Property was in the name of M & M Wyman Trust a/k/a M. & M. Wyman Trust (the "Trust"), of which the Wymans are the Trustees. In April 2008, before this case was filed, Couto's Realty Investment Company II, LLC ("Couto's") purchased the Property from the Trust for $1,550,000, and granted a first mortgage to Sovereign Bank ("Sovereign").

The claims of the Commonwealth's Department of Revenue ("MDOR") rest on M.G.L. c. 62C, §50(a) and (b). Couto's and Sovereign submit that summary judgment should enter against the Commonwealth because the second sentence of M.G.L. c. 62C, §50(a), which governs liens against property held in the name of a trust, was not in effect when all but two of the state tax liens arose, and that second sentence is not retroactive. Moreover, none of the notices of lien that were recorded name the Trust, which owned the Property at all relevant times. As a result, under the unambiguous language of Section 50(a), the liens are not enforceable against Couto's or Sovereign. In any case, summary judgment in favor of MDOR with respect to assessments made under M.G.L. c. 62C, §30, is precluded because MDOR failed to submit admissible evidence that it complied with that statute's requirement that it make assessments within two years of receiving notice of new federal tax assessments.

**UNDISPUTED MATERIAL FACTS**[1]

The Trust was created by a Declaration of Trust dated August 31, 1972, and recorded with the Barnstable County Registry of Deeds at Book 1720, Page 308.[2]   (McGurk Aff. Exh. K)

Transfer Certificate of Title No. 94814 was issued to Michael P. Wyman and Maurice B. Wyman, Trustees of M. & M. Wyman Trust, with respect to the registered portion of the Property on December 23, 1983.  (McGurk Aff. Exh. L-1)[3]  The Trust is listed as Document No. 428,688 on the Memoranda of Encumbrances that is part of that Transfer Certificate.  (*Id.*)  By quitclaim deed dated May 6, 1987, and recorded at Book 5715, Page 26, the Trust took title to the recorded portion of the Property.  (*Id.* Exh. L-2)

MDOR purportedly sent Notices of Assessments of additional taxes to Maurice B. and Cynthia Wyman on June 10, 2003, and December 27, 2003.  (*Id.* Exh.'s C-1 and C-2)  MDOR also purportedly sent Notices of Assessments to Michael Wyman on September 24, 2003, November 25, 2003.  (*Id.* Exh.'s H-1 and H-2)  The McGurk Affidavit does not state that Mr. McGurk has personal knowledge of the dates on which MDOR received from the Internal Revenue Service information showing that it had made a final determination increasing the federal taxable income of either of the Wymans, and the materials attached to that Affidavit do not contain those dates.  (Defendants' Response to Plaintiff's Statement of Material Facts, ¶¶3, 9)

MDOR recorded Notices of Massachusetts Tax Liens ("NMTL's") against Maurice B. Wyman and his wife, Cynthia, in the Barnstable Registry on October 16, 2003, March 29, 2004

---

[1] The facts in this section are drawn from the Affidavit of Donald E. McGurk, filed by MDOR, and the Affidavit of Gordon M. Orloff, filed herewith.

[2] All Book and Page numbers refer to this Registry.

[3] The registered land references are to instruments filed in the Barnstable Registry District of the Land Court.

and April 9, 2004.  (*Id.* Exh. E)  MDOR separately recorded in that Registry NMTL's against Michael Wyman (one of which also show his wife's taxpayer identification number) on February 24, 2004 and April 9, 2004.  (*Id.* Exh. J)

On February 20, 2006, after the passage of the second sentence of M.G.L. c. 62C, §50(a), discussed below, the Commonwealth purportedly sent an additional Notice of Assessment against Maurice (and Cynthia) and an additional Notice of Assessment against Michael.  (*Id.* Exh.'s C-3 and H-3)  New NMTL's were recorded in the Registry on November 19, 2007.  (*Id.* Exh.'s E and J)

None of the Notices of Assessment and, more importantly, none of the NMTL's name the Trust or the Wymans as Trustees of the Trust, and they do not list the Trust's taxpayer identification number.  (*Id.* Exh.'s C, H, E and J; Orloff Aff. Exh. B)  Consistent with this fact, the NMTL's are not indexed in the Registry under the name of the Trust.  (McGurk Aff. Exh.'s U and V)

By deed dated March 24, 2008, and recorded with the Registry on April 24, 2008, at Book 22855, Page 51, Couto's acquired the Property from the Trust for $1,550,000.  (*Id.* Exh. N)  Also on April 24, 2008, Couto's recorded a mortgage on the Property in favor of Sovereign.  (*Id.* Exh. O)  On that same date Couto's received Transfer Certificate of Title No. 185747 with respect to the registered portion of the Property.  Sovereign's purchase money mortgage also includes that registered land.  (*Id.* Exh. N)

## PROCEDURAL HISTORY

On or about July 8, 2008, MDOR filed suit in the Superior Court for Suffolk County, Massachusetts, against Couto's and Sovereign to collect the Wymans' purportedly unpaid state income tax by seeking to foreclose on state tax liens that allegedly attached to the Property (the

"State Court Action"). The United States of America intervened in the State Court Action, and then removed it to this Court.

The MDOR, on the one hand, and Couto's and Sovereign, on the other, have now filed cross-motions for summary judgment. This memorandum of law is filed in support of Couto's and Sovereign's cross-motion for summary judgment and in opposition to the MDOR's motion.

## ARGUMENT

I.  RELEVANT STATUTES AND PRINCIPLES OF CONSTRUCTION.

It is well settled that "[t]ax statutes are to be construed strictly, and all ambiguities are resolved in favor of the taxpayer." *Prudential Ins. Co. of America v. Commissioner of Revenue*, 429 Mass. 560, 564 (1999) and cases cited therein. *See also State Tax Commission v. John Hancock Mut. Life Ins. Co.*, 361 Mass. 125, 130 (1972) (same).

M.G.L. c. 62C, §50(a) creates a tax lien in favor of the Commonwealth. The Commonwealth's claim rests almost entirely on the second sentence of M.G.L. c. 62C, §50(a) ("Section 50(a)"). That second sentence, which was added to Section 50(a) by St. 2005, c. 163, §18, provides:

> The lien shall also extend to property or rights to property of a trust with respect to tax amounts due from a grantor or other person treated as the owner of a portion of such trust by reason of sections 671-678 of the Code, and to property or rights to property of a disregarded entity with regard to tax amounts due from the owner of the entity, but with respect to real property and fixtures, the lien shall not be valid against a mortgagee, pledge, purchaser or judgment creditor unless the notice to be recorded … includes therein the names of the persons in whom the record title to the real property or fixtures stands at the time of recording the notice.

(the "Second Sentence"). Copies of the relevant sections of St. 2005, c. 163 are attached to the Orloff Affidavit as Exhibit A. *See also* M.G.L. c. 62C, §50(b)(1) (A section 50 lien is not valid against any purchaser or mortgagee "until notice thereof has been filed by the commissioner …

5

[w]ith respect to real property or fixtures, in the registry of deeds of the county where such property is situated").

MDOR had a two year period to timely issue notices of intention to assess additional Massachusetts income tax after its receipt of information from the federal government that it had made a final determination of an individual's taxable income. M.G.L. c. 62C, §30.

II. AS A MATTER OF LAW, THE USA'S LIENS AGAINST THE WYMANS DID NOT ATTACH TO THE PROPERTY BECAUSE, WHEN THOSE LIENS WERE FILED, THE TRUST, NOT THE WYMANS, OWNED THE PROPERTY.

    A. The Second Sentence is Not Retroactive and Therefore Liens that Arose Before its Effective Date of December 8, 2005, Did Not Attach to the Trust's Property.

St. 2005, c. 163, §§59-66, sets out various effective dates for certain sections of that Chapter 163. However, those Sections do not contain an effective date for the Second Sentence. Chapter 163 also does not contain any language providing that the new, Second Sentence took effect retroactively. Therefore, as agreed by MDOR in footnote 6 of its brief, it was effective upon the passage of Chapter 163 on December 8, 2005.[4]

It is black letter law that "[a] statute operates prospectively only, unless the legislative intent is unequivocally clear that the application should be retroactive." *Marks v. Department of State Police*, 74 Mass. App. Ct. 219, 224 (2009), review den. 454 Mass. 1107 (2009) (citation omitted). *See also Sentry Fed. Sav. Bank v. Cooperative Cent. Bank*, 406 Mass. 412, 414 (1990) (same). "To the extent that there may be uncertainty about the application of new legislation, it must be resolved against retroactivity." *Fleet Nat'l. Bank v. Commissioner of Revenue,* 448 Mass. 441, 449 (2007) (citation omitted). In *Fleet Nat'l. Bank*, the Supreme Judicial Court held that a 2003 amendment to M.G.L. c. 62C, §40, affected "an existing substantive right," and that "the Legislature made no … [explicit] pronouncement to indicate that the 2003 amendment …

---

[4] Chapter 163 was passed as an emergency law.

6

was to have retroactive effect. … Accordingly, we treat the 2003 amendment as operating prospectively." *Id.* at 450. *See also Kunelius v. Town of Stow*, 588 F.3d 1, 11 at n. 8 (1st Cir. 2009) ("We apply the law [M.G.L. c. 61] as it was before the legislature amended it…." (citations to *Fleet Nat'l Bank* and other cases omitted); *Difiore v. American Airlines, Inc.*, 688 F. Supp.2d 15, 27-28 (D. Mass. 2009) (amendment to Massachusetts statute changing substantive rights not applied retroactively).

The Section 50(a) tax liens assessed and recorded against the Wymans before December 8, 2005, did **not** "also extend to property or rights to property of a trust" as provided in the new, Second Sentence. Assuming *arguendo* that the assessments were valid, the MDOR liens (with the exception of the final lien against each of the Wymans) existed before December 8, 2005, and subjected certain property owned by the Wymans – exclusive of Trust property – to specific rights in favor of the Commonwealth. The extension of an existing lien to additional property held by the Trust plainly would effect a change in both the Commonwealth's and the Wyman's substantive rights.

Chapter 163 contains eight sections that expressly address effective dates. However, not one of those sections made an explicit "pronouncement to indicate that the … amendment [adding the Second Sentence]… was to have retroactive effect. …" *Fleet Nat'l. Bank,* 448 Mass. 441 at 450. As a result, that second sentence does not apply retroactively to the liens that were in existence before December 8, 2005.

The Commonwealth does not even contend that the 2005 amendment adding the Second Sentence was retroactive. Instead, it argues that "the enactment" in 2005 of the Second Sentence itself "gave rise to after-acquired property to which the MDOR's tax liens immediately attached." MDOR Brief, p. 13 (footnote omitted). *See also Id.* at 14 ("<u>on December 8, 2005</u>, by

7

virtue of the enactment of the second sentence of Section 50(a), <u>the Wymans acquired an interest in the Bourne Property</u>…." (emphasis added)).

This strained position is not supported by any citations to case law or by common sense. The Trust was at all relevant times the legal owner of the Property. *See* McGurk Aff. Exh. K ¶D. ("The Trustees shall have full legal title to all property of the Trust…."); *Id.* Exh. L (deeds of the Property to Michael P. Wyman and Maurice B. Wyman, Trustees of M. & M. Wyman Trust). It is undisputed that there was no change in ownership of the Property until it was sold to Couto's. *See* MDOR Brief p. 5 ("On April 24, 2008, the Wyman Trust transferred title to the Bourne Property to Couto's …."). Moreover, each of the Wyman's interests in the Trust were defined and created by the Trust instrument. *Id.* Exh. K ¶L ("The entire beneficial interest of this trust shall be held by the persons listed as beneficiaries in the Schedule of Beneficiaries…; and the interests of the beneficiaries are as stated in said Schedule."). The enactment of the Second Sentence did nothing whatsoever to convey the Trust's interest in the Property to the Wymans. The MDOR's attempt to transmute the statutory amendment adding the Second Sentence into a conveyance to the Wymans of "after-acquired property" is fallacious and must be rejected.

As acknowledged by MDOR in footnote 5 of its brief, only the 2006 assessments were made after the effective date of the second sentence of Section 50(a). Those assessments were the subject of the final two NMTL's at issue, which were recorded on November 19, 2007. (McGurk Aff., final pages of Exh's. E and J) Thus, even in MDOR's best case scenario, only those two liens would have attached to the Property and only those two liens would have priority over the interests of Couto's and Sovereign. The remaining liens did not attach to the Property, which was owned by the Trust.

B.  None of the MDOR Liens Are Enforceable Against Couto's and Sovereign Because Those Liens Do Not Include the Name of the Trust.

In any event, none of the MDOR's liens attached to the Property because they did not comply with the statutory requirements set forth in the Second Sentence of Section 50(a). That sentence provides in relevant part:

> The lien shall also extend to property or rights to property of a trust with respect to tax amounts due from a grantor or other person treated as the owner of a portion of such trust…, **but with respect to real property** and fixtures, **the lien shall not be valid against a mortgagee**, pledge, **purchaser** or judgment creditor **unless the notice to be recorded** … **includes** therein the names of the persons **in whom the record title to the real property** or fixtures **stands at the time of recording** the notice.

(emphasis added).

As noted earlier, the Second Sentence must be construed strictly against MDOR. The language used in that Second Sentence reflects the basic principle that beneficiaries of a trust do not hold legal title to real estate owned by a trust. Rather, legal title to land held by a trust is held by its trustees, in their capacity as such, and the beneficiaries have merely a personal interest, not legal title to the land. *See, e.g., First Fiduciary Corp. v. Comm'r of Banks*, 43 Mass. App. Ct. 457, 458 (1997) ("As a trustee, First Fiduciary holds legal title to trust assets."); *In re. Varrichione*, 354 B.R. 563, 571-572 (Mass. 2006) (beneficial interest in a trust is personal property, and Trustee's "legal title" to land is different from debtor's "beneficial interest in the Trust whose *res* is the land.").[5]

The General Laws contain other references to property that "stands" in the name of a person. Thus, M.G.L. c. 223, §67, concerns attachments of fraudulently conveyed land. In order

---

[5] Paragraph D of the Trust provide in relevant part: "The Trustees shall have full legal title . . . and shall have and exercise the exclusive management and control of such property in any manner that said Trustees shall deem in the best interest of the beneficiaries, with all of the rights and powers of the absolute owner thereof." McGurk Aff. Exh. K.

9

to be valid against certain purchasers the return must include a brief description of the land "and the names of the persons in whom the record or legal title stands."[6] In other words, if a trust holds legal title to land in which the defendant holds an interest, an attachment of that interest must name the trust as the title holder. This statutory language is almost identical to that used in the Second Sentence. Similarly, there are specific time limits imposed by statute when an execution is levied "on land or rights the record title to which fraudulently stands in the name of a person other than the debtor …." M.G.L. c. 236, §47.[7]

The cases and practice in Massachusetts hew faithfully to the plain language in the attachment and execution statutes. Thus, in *Virta v. Mackey*, 343 Mass. 286 (1961), the Supreme Judicial Court noted that "the property was attached as that of the defendant trustees standing in the name of the tenant to whom, it was contended, conveyance had been made by the trustees in fraud of creditors." *Id.* at 287. *See also id.* (demandant had first "attached land standing in the names of Ames and Katherine Aksila…."); *Foster v. Evans*, 384 Mass. 687, 697 (1981) (plaintiff "elected to attach and levy execution upon the property standing in the name of Mary P. Evans pursuant to G.L. .c 109A, §9(1)(b) …."); *Hawkins v. Farley*, 191 Mass. 236, 237 (1906) ("respondents Mark Kellman and Celia Kellman his wife, and made therein a special attachment of certain real estate in that county standing in the name of the respondent Celia as the property of the respondent Mark Kellman."); *Hudson Sav. Bank v. Plante, Trustee of Applerock Trust*, 23 Mass. L. Rptr. 523, 523 (Worcester Superior Ct., Jan. 14, 2008) (motion for levy of execution included "132 Century Mill Rd., Bolton, Mass. standing in the name of Applerock Realty

---

[6] Such attachments of property standing in the name of someone other than the defendant are generally known as "special attachments." *See also* Crocker's Notes on Common Forms, §791 at p. 17-3 ("A 'so-called special attachment' [under M.G.L. c. 223, §67] will issue against a defendant's land standing in the name of another.").

[7] *See also* Crocker's Notes on Common Forms, §793 at p. 17-7 (Discussing levy "on lands or rights, the title to which fraudulently stands in he name of a person other than the debtor ….").

Trust"). The Legislature must have been aware of this longstanding law when it wrote the Second Sentence. *See, e.g., Carr v. Howard*, 426 Mass. 514, 523 (1998) ("[t]he Legislature must be assumed to know the preexisting law and the decisions of this court." (citations omitted)); *Hadley v. Amherst*, 372 Mass. 46, 51 (1977) ("We assume, as we must, that the Legislature was aware of the existing statutes in enacting the above legislation …, and that if possible a statute is to be interpreted in harmony with prior enactments to give rise to a consistent body of law." (citations omitted)).

Importantly, MDOR expressly concedes, as it must, "that record title to the Bourne Property <u>stood in the name of the Wyman Trust</u> at all times prior to April 24, 2008, the date of the conveyance to Couto's Realty." MDOR Brief, p. 8 (emphasis added). The liens make no mention of the Trust. Indeed, when the name of the Trust is searched in the Registry records the liens do not appear. (McGurk Aff. Exh's. U, V)[8] Therefore, MDOR's notices of lien failed to perfect any liens on the Property that are enforceable against Couto's and Sovereign. Under the unambiguous language of the statute, as strictly construed, MDOR's liens are not "valid against" Couto's or Sovereign because the recorded notices did not "include[] therein the names of the persons in whom the record title to the real property or fixtures … [stood] at the time of recording the notice."[9] MDOR's claims should be dismissed with prejudice.

---

[8] Further, the NMTL's suggest that MDOR intended to attach the <u>individual</u> interests of each of the Wymans. Three of the four NMTL's against Maurice B. Wyman name both him and his spouse, Cynthia Wyman. They also include the social security/taxpayer identification numbers of those individuals. *See* McGurk Aff. Exh. E. In contrast, they do not include the Trust's taxpayer identification number. *See* Orloff Aff. Exh. B.

[9] That the Trust may be a spendthrift trust does not affect the analysis. MDOR may have been able to reach the Property had it recorded Notices naming the Trust as the record owner of the Property. However, the Notices that MDOR actually filed did not do so and, as a result, are not valid against Couto's and Sovereign under the plain language of the Second Sentence.

III.     SUMMARY JUDGMENT IN FAVOR OF MDOR IS PRECLUDED BY ITS FAILURE TO PRESENT ADMISSIBLE EVIDENCE THAT IT TIMELY ASSESSED THE ADDITIONAL TAXES THAT IT SEEKS TO COLLECT.

In order to prevail on its motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The burden is upon the moving party to show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).

Under M.G.L. c. 62C, §30, MDOR had a two year period to issue notices of intention to assess additional Massachusetts income tax after its receipt of information from the federal government that it had made a final determination of the Wymans' respective taxable incomes. The McGurk Affidavit does not establish through admissible evidence the dates on which MDOR received that information with respect to either of the Wymans. Therefore, even if its liens otherwise would have attached to the Property, MDOR has failed to establish that it timely assessed any new taxes under Section 30. This failure precludes the issuance of summary judgment in MDOR's favor with respect to such taxes.

## CONCLUSION

For the foregoing reasons, Couto's and Sovereign respectfully request that the Court grant them summary judgment against the MDOR and deny the MDOR's motion for summary judgment.

        COUTO'S REALTY INVESTMENT CO., II, LLC, and SOVEREIGN BANK

        By their attorneys,

        /s/ Gordon M. Orloff
        Gordon M. Orloff, BBO No. 544306
        gorloff@rackemann.com
        Gareth I. Orsmond, BBO No. 633031
        gorsmond@rackemann.com
        RACKEMANN, SAWYER & BREWSTER
        160 Federal Street
        Boston, Massachusetts 02110
        (617) 542-2300

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 8, 2010.

        /s/ Gordon M. Orloff