UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
COMMONWEALTH OF MASSACHUSETTS, by and ) Civil Action No. 10- 10891-PBS
through Navjeet Bal, Commissioner of Revenue )
               Plaintiff ) Judge Patti B. Saris
v. ) Magistrate Judge
COUTO'S REALTY INVESTMENT CO. II, LLC, and ) Jennifer C. Boal
SOVEREIGN BANK, Defendants and Third Party )
 Plaintiffs, )
v. )
MAURICE B. WYMAN and MICHAEL P. WYMAN, )
Individually and as Trustees of the M & M WYMAN )
TRUST, Third Party Defendants, )
and )
United States of America, Party in Interest )
_____)

### PLAINTIFF'S SUPPLEMENTARY MEMORANDUM OF LAW

      The plaintiff Commonwealth of Massachusetts, by its Department of Revenue ("MDOR") respectfully submits this supplementary memorandum of law to address the meaning of the phrase "the names of the persons in whom the record title to the real property or fixtures stands" as that phrase is used in the Massachusetts tax lien statute, G.L. c. 62C, § 50(a). (A copy of the statute is attached for the Court's reference.) This memorandum supplements both the argument in MDOR's memorandum in support of its motion for summary judgment, at pages 14-16, and MDOR's response to the argument in the memorandum in opposition to MDOR's motion for summary judgment, at pages 9-11, filed by the defendants Couto's Realty Investment Co. II, LLC, and Sovereign Bank (jointly, "Couto's)

      To perfect a tax lien against real property, subsection (b)(1) of § 50 requires MDOR to file a notice of the tax lien in the registry of deeds for the county in which the land is located:

> The lien imposed by this section shall not be valid as against any mortgagee, pledgee, purchaser or judgment creditor until notice thereof has been filed by the commissioner ...[w]ith respect to real property or fixtures, in the registry of deeds of the county where such property is situated….

The second sentence of subsection (a), which is the statutory provision MDOR relies on in this case, makes the lien effective against certain trusts and uses the quoted phrase to describe the how the notice must be worded:

> The lien shall also extend to property or rights to property of a trust with respect to tax amounts due from a grantor or other person treated as the owner of a portion of such trust by reason of sections 671-678 of the Code … but with respect to real property and fixtures, <u>the lien shall not be valid against a mortgagee, pledge, purchaser or judgment creditor unless the notice to be recorded pursuant to paragraph (1) of subsection (b) includes therein the names of the persons in whom the record title to the real property or fixtures stands at the time of recording the notice.</u>

G.L. c. 62C, § 50(a) (emphasis supplied)

It is not disputed that in 1972 Maurice B. Wyman ("Maurice") and Michael P. Wyman ("Michael") created the M&M Wyman Trust (the "Wyman Trust"); that Maurice and Michael were the sole trustees of the Wyman Trust; and that Maurice and Michael as trustees of the Wyman Trust acquired title to real property located in Bourne, Mass. (See defendants' response to MDOR's statement of undisputed facts, ¶¶ 16-20). It is also not disputed that MDOR recorded notices of tax liens with the registry of deeds for Barnstable County, the county in which the real property is located, which set forth the amounts of unpaid Massachusetts income taxes owed by Maurice and Michael. (See defendants' response to MDOR's statement of undisputed facts, ¶¶ 6, 14)

Copies of the notices of tax liens are attached the McGurk Aff. as Ex. E (Maurice) and Ex. J (Michael). The names on the notice are, respectively "Maurice B. Wyman" and "Michael Wyman."

MDOR submits that these notices of tax lien comply with the statutory requirement that the notice must "include[] therein the names of the persons in whom the record title to the real property or fixtures stands." This is a question of statutory interpretation, and the precise language of the statute must dictate the outcome.

> [W]hen interpreting a statute, we focus initially on the actual language used. "Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent" … and "the courts enforce the statute according to its [plain]

wording," … unless such construction will lead to consequences that are "absurd or unreasonable," … because we assume that the Legislature intended to act reasonably.

Nat'l Lumber Co. v. Lombardi, 64 Mass. App. Ct. 490, 494 , fn. 8 (Mass. App. Ct. 2005) (interpreting the mechanic's lien statute)

The statute is narrowly addressed to validating a tax lien against a certain type of property - property held in trust - as shown by the express words "property of a trust" and "such trust."  It is not addressed to attachments, executions, or other remedies for enforcing a judgment, as Couto's memorandum argues.  Use of the word "trust" in the statute shows that the Legislature knew how to use the term.  It is significant, therefore, that the Legislature did not state that the notice of tax lien must "include[] therein the name of the trust in which the record title to the real property or fixtures stands."  If MDOR were required to include the name of the trust on the tax lien, then the statute would say so.  But it does not.  Instead the statute uses the phrase "names of the persons in whom."  The names of the trustees are Maurice Wyman and Michael Wyman, and those are the names on the notices of tax lien.

This conclusion is consistent with the argument advanced by Couto's, who correctly point out that "beneficiaries of a trust do not hold legal title to real estate owned by a trust.  Rather, legal title to land held by a trust is held by its trustees, in their capacity as such…."  (Couto's' memorandum in opposition to summary judgment, p. 9.)  This principle is properly characterized as black letter law.  "[U]nder a trust, perfect ownership is decomposed into its constituent elements of legal title and beneficial interest, which are vested in different persons at the same time….In a trust relationship …the trustee possesses legal title to the property." 76 AmJur 2d "Trusts", § 1 (Lawyers Co-op. 1992)

This conclusion is also consistent with the general principle that, under Massachusetts law, a donative trust like the Wyman Trust, which is not a business trust, a partnership, or a corporation,

3

does not have a separate existence as a legal entity and can act only by and through its trustees. The Supreme Judicial Court expounded this principle in Larson v. Sylvester, 282 Mass. 352 (1933):

> Speaking generally, a trust is not a legal personality. With the exception later to be dealt with, it cannot be sued. It is represented by the trustee. He embodies it. holds title. He deals with the property in which trust rights exist. Contracts with regard to the rights and property affected by trusts are the contracts of the trustee. He, in person, is liable upon them. He is not acting as representative or agent of another. He is acting for himself, but with fiduciary obligations to others.… It differs from a corporation or a partnership. The former is a legal person. The latter, in the law of Massachusetts, is an association of individuals united for transaction of business. The former can be sued as a body corporate in its own name. The latter must be sued, ordinarily, in the names of the partners. Many purposes are served if persons may unite in placing property in the hands of a trustee and allowing him to transact business not as an agent or a partner of theirs but as owner of the property subject only to equitable obligations.

Id. at 357-358 (citations omitted)

See, e.g., Morrison v. Lennett, 415 Mass. 857, 859-860 (1993) ("a trust is not a legal entity which can be sued directly." (citations omitted))

This principle illuminates the meaning of the requirement that the notice of the tax lien must "include[] therein the names of the persons in whom the record title to the real property or fixtures stands."  Since the trust does not have any separate legal existence and can only act through the trustee, only the trustee can be that "person."

MDOR does not assert that the term "person" in § 50(a)(1) is necessarily limited to individuals,[1] and acknowledges that, if the trustees of the Wyman Trust had been any entity other than Maurice and Michael the notice of tax lien would have been ineffective.  For example, if the trustee had been State Street Bank and Trust, or if a different individual had been named as trustee, then the notice of tax lien would have had to include that name.  But here, since Maurice and Michael were the trustees and were named in the notices of tax lien, the notices were effective.

---

[1] Counsel for MDOR may have misspoken on this point at the hearing on the motion for summary judgment on December 22, 2010.

This interpretation is also consistent with the fundamental underlying objective of the recording statute, which is to give notice to the world of all claims and interests asserted against real property. This objective was noted by the court in <u>National Lumber</u>, supra. Upholding the validity of a mechanic's lien that had been promptly delivered to the register of deed but through inadvertence had not been recorded until fourteen days later, the court stated,

> [T]he underlying objective of the recording aspect of the [mechanic's lien] statute was not thwarted in the instant circumstances. The statute is intended to ensure that an enforcement action may readily be identified through routine title searching procedures, . . . and it accomplishes that objective by requiring that an attested copy of the enforcement complaint be recorded within thirty days of its filing with the court. There was no suggestion of any third party being prejudiced or misled by lack of notice during the fourteen days that the complaint did not appear on the registry's books. Further, the property owners never disputed that they had timely notice of National's lien….

<u>Nat'l Lumber</u>, 64 Mass. App. Ct. at 498 (citations and internal quotation marks omitted)

In this case Couto's has never asserted, as a defense to MDOR's tax lien, that they did not have knowledge of the notices of the tax liens. Moreover, a competent title examiner, when reviewing the title to the Subject Property, would necessarily have found the declaration of trust creating the Wyman Trust, which expressly named both Maurice and Michael as the trustees. A further search under the names of the trustees would have led to the discovery of the notices of tax lien. In 2008, when the conveyance to Couto's took place (see Couto's response to MDOR's statement of undisputed facts, ¶¶ 22, 23), the second sentence of § 50(a) had been part of the Massachusetts tax lien statute for a more than two years.[2] Thus, the effect of the notices of tax lien was, or should have been, apparent to them.

---

[2] St. 2002, c. 163, S 18, which inserted the second sentence of § 50(a), was enacted on December 8, 2005.

In conclusion, for the reasons set forth above and in its initial memorandum, MDOR respectfully requests that this Court enter summary judgment in its favor against Couto's Realty Investment Co., Inc. and Sovereign Bank. [3]

> COMMONWEALTH OF MASSACHUSETTS
> by and through
> NAVJEET K. BAL, COMMISSIONER OF REVENUE
> By her attorneys,
> MARTHA COAKLEY, ATTORNEY GENERAL
> KEVIN W. BROWN, Esq. Special Asst. Attorney General
>
> */S/ Jeffrey S. Ogilvie*
> JEFFREY S. OGILVIE  (BB0 # 377815)
>   *Counsel for the Commissioner*
> Department of Revenue
> Litigation Bureau, 7th Floor
> P.O. Box 9565
> 100 Cambridge Street
> Boston, MA 02114-9565
> (617) 626-3223
> email: ogilviej@dor.state.ma.us

Dated:   January 7, 2011

The undersigned certifies that on January 7, 2011, a copy of the foregoing document filed through the ECF system was sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on August 30, 2010.

> */S/ Jeffrey S. Ogilvie*
> Jeffrey S. Ogilvie  (BB0 # 377815)

---

[3]   At the hearing on the motion for summary judgment on December 22, 2010, the parties and the Court also addressed the question of the date on which MDOR had received notice from the Internal Revenue Service of the changes to federal income that led to the assessments forming the basis for MDOR's tax liens.  The parties have resolved this issue by stipulation filed herewith.

In addition, the Court noted MDOR's omission of a copy of IRC §§ 671-678 from MDOR's memorandum of law.  MDOR respectfully submits a copy herewith (attached).